**IN THE COURT OF APPEALS OF IOWA**

No. 21-1450
Filed February 16, 2022

**IN THE INTEREST OF A.H. and M.S.,**
**Minor Children,**

**K.S., Mother,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Johnson County, Deborah Farmer

Minot, District Associate Judge.

　　A mother appeals the termination of her parental rights to two children.

**AFFIRMED.**

　　Kelly D. Steele, Cedar Rapids, for appellant mother.

　　Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

　　Anthony Haughton, Cedar Rapids, attorney and guardian ad litem for minor

children.

　　Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**TABOR, Presiding Judge.**

A mother, Kay'Vyonna, appeals termination of her parental rights to eight-year-old A.H. and two-year-old M.S. After the life-threatening assault her husband perpetrated on A.H., Kay'Vyonna struggled to demonstrate that she could be a safe parent to both boys. Unfortunately, her efforts fell short, and we determine on review that the termination should be affirmed.[1]

### I. Facts and Prior Proceedings

Kay'Vyonna was just fifteen years old when she gave birth to A.H.[2] Five years later, Kay'vyonna began dating Matthew. They married and had M.S. together in early 2019.

In July 2019, a 911 call brought paramedics to Kay'Vyonna and Matthew's home. They found A.H. unresponsive in his bed. He had no heartbeat and had to be resuscitated. He suffered massive abdominal injuries caused by blunt force trauma. Ultimately, Matthew pleaded guilty to felony child endangerment and was sentenced to an indeterminate term of ten years in prison. The criminal proceedings revealed that Matthew had punched A.H. in the abdomen the day before. Matthew and Kay'Vyonna agreed not to seek medical attention for the child even though he vomited and complained of pain.[3]

---

[1] Our review is de novo. *See In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). We give the juvenile court's fact findings respectful consideration, especially with credibility determinations, but we are not bound by them. *Id.*

[2] A.H.'s father played no significant role in his life. He was notified of these proceedings but did not participate. The court terminated his parental rights, and he does not appeal.

[3] Two law enforcement officers from the criminal case testified at the termination hearing because they had taken a special interest in A.H. One officer called A.H. "a miracle child" for surviving such a brutal attack. A.H. was unconscious for several days after being revived and endured multiple surgeries.

After the State petitioned for removal of both children from the home, more evidence of abuse and neglect surfaced. Drug testing showed both boys had been exposed to marijuana. As his condition improved, A.H. reported other instances of physical abuse and inappropriate punishment by Matthew, who cared for the children when Kay'Vyonna was at work. Medical examination showed signs of older injuries as well. When asked, Kay'Vyonna said she knew Matthew used physical punishment against A.H. but she "felt that we had addressed it and we had got to a point where he [Matthew] knows not to touch him without me being around." Kay'Vyonna was also the victim of Matthew's domestic abuse.

The Department of Human Services (DHS) placed the children in foster care. The court ordered Kay'Vyonna to engage in individual therapy, drug testing, and other services. For the next year, Kay'Vyonna made little progress, testing positive for marijuana several times. She remained in contact with Matthew. And she pleaded guilty to second-degree theft for cashing checks from a resident of an assisted living center where she worked, receiving a deferred judgment. She was later convicted of identity theft for misusing a workplace credit card. The district court found she violated her probation and revoked her deferred judgment but suspended the sentence and placed her on probation on the new conviction.

In June 2020, almost a year after removal, the State petitioned to terminate parental rights. But five months later the State recommended giving Kay'Vyonna more time, and the court agreed. She made significant progress from fall 2020 to spring 2021—maintaining employment, housing, and transportation, testing negative for drugs, and consistently attending visitation. Visitation progressed to

semi-supervised and overnight and then, in April 2021, both children had a trial home placement. A.H.'s placement began on April 4, and M.S.'s on April 16.

At the start of the trial home placement, DHS provided family preservation services—that is, a service provider spent at least one hour per day with the family observing and providing support. Kay'Vyonna was eligible for thirty days of family preservation services and used all of them. But then things fell apart. Kay'Vyonna stopped showing up for drug testing. In late June, she was arrested in Illinois. Without the DHS knowing, the children stayed with their grandmother, returning to Kay'Vyonna when she was released. Still, the DHS did not end the trial home placement right away. But workers later learned Kay'Vyonna tested positive for marijuana on her arrest. And when M.S. tested positive for ingested marijuana in mid-July, the DHS sought a second removal order. Both children returned to the same foster family.

After the aborted trial home placement, the State again pursued termination. Following an August 2021 trial, the court terminated Kay'Vyonna's parental rights under Iowa Code section 232.116(1) (2020), paragraphs (d) and (i) as to both children, (f) as to A.H., and (h) as to M.S. Kay'Vyonna appeals.

## II. Analysis

### A. Statutory ground for termination

Kay'Vyonna first contends the State did not prove the statutory grounds for termination. We look for clear and convincing evidence. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). To satisfy that standard, the State's proof must leave us with no "serious or substantial doubts" about the correctness of the juvenile court's conclusions of law. *Id.* When, as here, the court rests its decision on more than

one paragraph under section 232.116(1), we may affirm on any supported ground. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We will address paragraphs (f) and (h) and, in particular, their common element challenged by Kay'Vyonna—that the children could not be safely reunited with her at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4), (h)(4).

Kay'Vyonna argues her parenting posed no safety concerns, she had established an appropriate home for the children, maintained steady employment, and the trial home placement was going well. She urges that her marijuana use is not sufficient reason to remove the children or terminate her rights because "other, less-restrictive alternatives were available such as the relapse prevention group through Prelude" and because marijuana is "legal in many states."

We agree that Kay'Vyonna provided an appropriate home for the boys during the two months of trial home placement. But her argument misses the point: the DHS did not end the trial home placement because Kay'Vyonna tested positive for marijuana but because one of the children did. When first confronted, Kay'Vyonna denied using marijuana and suggested M.S. ingested it because of the people she hung out with. The presence of an illegal drug in a child's system is a ground for adjudication, so the State proved the children could not be returned to Kay'Vyonna's care at the present time. *See* Iowa Code § 232.2(6)(o) (defining a child in need of assistance as one "[i]n whose body there is an illegal drug present as a direct and foreseeable consequence of the acts or omissions of the child's parent"); *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992) (finding children cannot be returned to a parent "if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication"). And even if

Kay'Vyonna were not using herself, it is concerning that she would allow people using an illegal drug to be around the children.

Kay'Vyonna's argument about the legality of marijuana in other states overlooks the fact that she is on probation in Iowa. Possessing marijuana here could lead to her revocation, and if incarcerated, an inability to care for her children. She has tested positive for marijuana several times over this case. At the termination hearing, she admitted she last used marijuana about three weeks earlier. She estimated she smoked seven or eight times per month. She also admitted that when she used marijuana during the trial home placement, it was because that month was "really hard" for her and she "was not in the clear right state of mind." Despite family preservation services and other supports, she found parenting during that short trial so stressful that she turned to marijuana. That bad choice did not bode well for permanent reunification.

The juvenile court also believed that Kay'Vyonna had failed to demonstrate that she was able or willing to protect the children from criminal activity or domestic violence. The court was not convinced that the mother appreciated the trauma inflicted by Matthew as she twice used the word "accident" when discussing the assault on A.H.

All in all, the State proved that the children could not be reunited with their mother at this point without the imminent risk of harm. The statutory ground is satisfied.

## B. Closeness of parent-child bond

Next, Kay'Vyonna contends it was not in the children's best interests to terminate her rights because of their close bond.[4]  Kay'vyonna argues her connection is particularly strong with A.H. who has often expressed a desire to live with her.  Several providers and the guardian ad litem (GAL) verified a strong bond between the two.  But that showing is not enough.  *In re A.B.*, 956 N.W.2d 162, 170 (Iowa 2021).  Under section 232.116(3)(c), the court may decide not to terminate if the parent proves by "clear and convincing evidence" that it "would be detrimental to the child at the time due to the closeness of the parent-child relationship."  *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).  This factor is permissive, not mandatory.  *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019).

When asked whether the termination would harm A.H., the social worker agreed it would "impact him" but also believed that "being bounced back and forth" was not easy for him.  The Family Centered Services (FCS) provider said the children are "happy to see Kay'Vyonna.  And then they [are] happy to go back" to their foster parents.  The workers also expressed concern that A.H. exhibited "parentification"—taking too protective a role with his mother.  The FSC provider said, "[H]e has voiced his concerns about how he worries about his mom and who's going to take care of her and what her life's going to be if he's not there to help her."  Ultimately she concluded, "I don't know if I would say it would be detrimental

---

[4] As many parents' attorneys do, Kay'Yvonna's counsel conflates a best-interests argument with the factors weighing against termination.  *Compare* Iowa Code § 232.116(2) (best interests), *with id.* § 232.116(3) (permissive factors).  *See, e.g.*, *In re A.K.*, No. 18-1959, 2019 WL 325865, at *3 (Iowa Ct. App. Jan. 23, 2019).  We view the argument as limited to section 232.116(3)(c).

to him" to terminate her rights. The GAL also prepared a thorough report struggling to weigh A.H.'s devotion to his mother against his own well-being. Ultimately the GAL concluded that A.H.'s love and "protective sensibilities" toward Kay'Vyonna do not outweigh the deficiencies in her "commitment to and ability to parent her two young children." Similarly, the court appointed special advocate reported to the court after the trial home placement failed that A.H. missed his mom but was adjusting well to being back with his foster family.

In considering this factor, we focus on whether the children will be "disadvantaged by termination" and whether that disadvantage outweighs the parent's inability to meet their needs. *D.W.*, 791 N.W.2d at 709. We agree that severing the relationship will be hard on A.H. But we see that disadvantage as less weighty than the strain on a ten-year old who worries about his mother while she struggles to be a safe parent. Kay-Vyonna has had two years and many chances to make that happen. We cannot continue, as the juvenile court put it, to "choose hope over reality" because of A.H.'s "deep and frequently articulated desire to return" to his mother. She did not offer clear and convincing proof that termination would be detrimental to A.H. So the permissive factor does not apply.

As for M.S., he has been out of his mother's care since he was just a few months old. Although he is comfortable with Kay'Vyonna, he appears equally bonded to his foster parents. On top of that, the GAL cautioned against separating the brothers. This permissive factor does not preclude terminating M.S.'s relationship with his mother.

## C. Reasonable efforts

Finally, Kay'Vyonna argues the DHS failed to provide reasonable efforts to reunify her with the children. When relying on paragraphs (f) and (h) as grounds for termination, as it did here, the State must show the DHS made reasonable efforts toward reunification as part of its ultimate burden of proof. *See In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019). Kay'Vyonna points out the DHS did not recommend a relapse prevention program rather than end the trial home placement. She asserts, "A relapse, on its own, may not be a reason to remove children from a parent's care." But it was not her relapse alone that triggered removal. Rather, M.S. tested positive for marijuana. What's more, the termination petition was on file for a full year before her relapse. It was reasonable for the DHS to believe it was time, even past time, to achieve permanency for these children. And the record shows the DHS offered many services to this family, including substance abuse evaluation and treatment. *See In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000) (focusing on the services provided and the parent's response, not on services that the parent later claims the DHS failed to provide).

We find the DHS made reasonable efforts under the circumstances. So we affirm termination of parental rights.

**AFFIRMED.**